Good morning, Your Honors. May it please the Court, my name is Ramiro Castro. I'm the attorney for the petitioner in this case. And could you wait just a minute? You're opposing counsel just getting settled. Your Honors, we're here to request that the Court reverse a decision by the Board of Immigration Appeals, which basically affirmed the Immigration Court's decision to predomit my client's applications for NACARA relief under Section 203 of the Act and under 241B of the Act. It was a cancellation and removal application. And the basis of that predomition decision was that the IJ made a decision that my client was subject to the persecuted bar under 240 of the Act on the basis that there was some evidence that my client was a member of the Treasury police in El Salvador in the 1980s, that he turned over certain captured or suspected guerrilla members to the S2 units, intelligence units of the Treasury police, and that there was some evidence that the Treasury police at that time was known to be an abuser of human rights. Now, these were three factual issues that the Court decided, although the judge in the lower court said that there was no direct evidence that my client was personally involved in the persecution of individuals on the basis of their social group membership or political opinion. There was absolutely no direct evidence of that. And the judge also stated that she was unaware of any precedents by which to evaluate the evidence that was presented to her. She basically said that she had no knowledge of any known precedents regarding what constitutes prima facie evidence of persecution. Now, the judge basically overlooked the decision of this Court in Miranda-Alvarado, which required that the Court identify and make a particularized evaluation of the conduct involved, a continuum of conduct. And Miranda-Alvarado I'm sorry, this is for purposes of determining the evidence. Excuse me, Your Honor. Maybe if you let me finish my question, you will actually answer the question. For purposes of making the government's prima facie case? Yes, for purposes of making the government's prima facie case, you have to have a continuum of conduct, which creates I thought all you needed was the government has to make a plausible case of assistance and so on, and then the burden shifts to your client to prove that he wasn't a persecutor. In this case, the government says he was a member of the Treasurer Police, and they're the kind of group that's known for persecution. Why is it not enough to shift the burden, and now the burden shifts to your client to show that he wasn't a persecutor? I don't believe that is sufficient evidence. The Court in Miranda-Alvarado Well, let's say it was the SS, or the Gestapo, or something. I don't know anything about the Treasurer Police, but there certainly are groups, or the Securitate in Romania, or the KGB in the Soviet Union. There are groups that are known for their oppressive tactics. Why is it not enough to say, look, you were a member of this group, enough to shift the burden. Now you show us that even though you're a member of this group that's known for oppressive tactics, you weren't a participant. Well, you have to have more, Your Honor. Under the rule of Miranda-Alvarado, you have to have particularized actions which point to specific personal involvement in the persecution. Now, was he involved in the torture? Was he present when these people were tortured, or did he say that he saw them torture? No. Miranda-Alvarado, the interpreter, actually participated in the actual session of the torture. I mean, and these were suspected Shining Path members who were turned over, and he was an active participant in the interpretation and in the torture. And it was clear that those facts created a presumption or an inference that this person was a persecutor. Now, in my client's case, he was a low-level soldier. He turned people over to the S2 units. He didn't know whether they were harmed. He said they might have been harmed. He doesn't know. He didn't participate in any interrogations with the S2 units. But the board found that he testified inconsistently, so it discounted his evidence. Yes, the courts did find that he lacked credibility on certain points because of so many inconsistencies. However, the judge also made an incomplete credibility determination by not discussing his demeanor, his tone. I mean, this man was very confused, inarticulate. Maybe he was lying and he was stumbling because he couldn't quite get his act together. I wasn't there. Well, the court found that he didn't lie, and that's specifically in the record in her decision, that he did not lie, that he did not make any misrepresentations, but that there were so many inconsistencies because of the fact that he had filed his asylum application 20 years ago and then was interviewed on the application 15 years later. And then he made inconsistent statements about where he was and what he did. But clearly, he was a low-ranking soldier in the Salvadoran Army. He didn't have a superior rank. Now, if he had been a superior in the S2 unit or an officer in the military, then I could see, well, yeah, he probably knew that these people were being harmed. But that's not the case here. He's a low-level soldier. He was doing his duty at the time. And I think that we have to look at the continuum of conduct, you know. We've got about three minutes left. Do you want to save it for rebuttal? Yes, I will, Your Honor. Okay, well, we'll hear from the government. Thank you, Your Honor. Good morning. It may please the Court, Keith McManus on behalf of the respondent. Now, the first thing to do is to point out that this case is distinguishable from Miranda-Alvarado, specifically because the only issue here is whether or not the government satisfied its initial burden of demonstrating that the persecutor bar may apply. There was no question in Miranda-Alvarado or in the case that's being argued in tandem with this case this morning that the government satisfied that initial burden. And so the question then became whether or not the petitioner had satisfied his burden of proving that he was not, in fact, a persecutor. Here, the only question before the Court is whether the government submitted sufficient evidence to satisfy that initial burden of proving that the persecutor bar may apply. And that, the government clearly did. The language of the regulation provides, quote, if the evidence indicates that a mandatory bar to relief, like the persecutor bar, may apply, then it becomes incumbent upon the alien to prove that such grounds do not apply. And because Mr. Gendre is here, always bears the ultimate burden of proof to establish that he's eligible for relief, the government is not required to prove conclusively that he is a persecutor. Initially, they must only set forth enough evidence for a fact finder to draw a reasonable inference that he is subject to the bar. And the question for the Court is, did the government offer sufficient prima facie evidence to indicate that the persecutor bar may apply? And the answer is yes. And there are three specific pieces of evidence that the Court can look to to assure itself that the government satisfied that burden. First, Mr. Gendre has testified that he delivered suspects to the S2 Intelligence Union of the Treasury Police, which, as the background evidence indicates, was a notorious violator of human rights during this time in El Salvador and did, in fact, commit atrocity arising from the level of persecution. The second, as Mr. Castro just admitted, Mr. Gendre has told the asylum officer that some of those individuals may have been harmed to the extent that they might have been persecuted. And then couple that, again, Your Honor, with the background evidence indicating that, as Judge Kaczynski suggests, not necessarily unlike the Gestapo or other groups, the Treasury Police and particularly S2 Intelligence Unit were notorious for this kind of conduct. A reasonable fact finder could, as the immigration judge and the Board did here, draw the inference from those facts that Gendre has assisted or otherwise participated in the persecution of others. I think the case is difficult, Your Honor, because, as the immigration judge pointed out, there may not be direct evidence of an actual act of persecution on account of protected ground here. But, again, for purposes of the initial burden that the government is required to satisfy, in order to draw the inference that the persecuted bar applies, the evidence is surely sufficient to at least meet that threshold burden. Would you say that Miranda Alvarado is a lot stronger case in this? In terms of the assistance? Yeah. I mean, there you've got the interrogator physically present. Right. And the panel and Miranda Alvarado said, that's the far contours of where we're going to put this bar. And now it seems like we're moving the bar past the contours, doesn't it? Well, there are two points, Your Honor. The first is I do think Miranda Alvarado, at least on the facts, is a stronger case. But all that does is illustrate what the Court pointed out in that case, that these cases, generally persecuted bar cases, always present difficult line-drawing issues. And, again, this will become much more clear in the next case, which is very fact-intensive and sort of hovers around that. No, don't give us a preview. Let's stick with this one. Yeah, I apologize. But, in any event, Your Honor, the second point is, again, what I started with. Miranda Alvarado did not involve this threshold question of whether the government had satisfied its burden there. There was no question that you move past the regulatory language which requires, does the evidence indicate? And it certainly had. And Mr. Miranda Alvarado was trying to prove that he was not, in fact, a persecutor, based on the number of factual arguments as well as legal arguments. And here we don't even reach that determination, because the only issue presented by Mr. Jandres is whether the government satisfied its initial burden. And, again, the threshold is relatively low, and I understand that that's a difficult sort of bitter pill to swallow. Well, it's not a bitter pill. I'm just trying to conceptualize it. Because if we said in Miranda Alvarado, this is the contour, this is the line, and if this petitioner is on the other side of the line, how do you get to a prima facie case? Well, let's say, for the sake of argument, Your Honor, that we were deciding whether or not Mr. Jandres had satisfied his burden of proving that he was not a persecutor. And you were pitting some sort of contrary evidence, which in this case was only his inconsistent testimony, with what the government put forth. What you have here is at least some indication that he turned over suspected guerrillas to the S2 intelligence unit, that those officials were responsible for the types of atrocities evidenced by the record, and that he admitted, as his attorney just did, that those people may have been persecuted following that interrogation. It may be a close case, as was Miranda Alvarado. Well, I don't know. I mean, just let me interrupt you for a second. In Miranda Alvarado, we know that people were there persecuted. That's right. Because the testimony was people were persecuted. Here, we don't even know. I agree, Your Honor. And, again, but that is an important distinction and a difference to be made, that that is not we're not addressing the question, or at least we don't reach the issue because he's waived it here, of whether Mr. Jandres satisfied his burden of disproving the assistance. I understand your point. And, again, Your Honor, I'm not saying it's difficult for me to concede that this case is weaker in that sense. Because what matters, ultimately, if, again, you're looking at the evidence, does it rise to the level of assistance? Did it further the persecution in some way? Now, again, you're right. Mr. Miranda Alvarado, for instance, was present in the room during the interrogations that resulted in persecution. So his connection to the ultimate acts of oppression was obvious. Right. But we don't even know if there's an ultimate act of oppression here. I mean, that's a curious thing. I understand, Your Honor. And, again, that's why I concede that it makes this case very difficult. Let me put it another way. If there's no evidence in the record of persecution, how can the government say we've made a prima facie case of assisting persecution? Well, Your Honor, it's not that there's a lack of evidence of persecution. There's no evidence of persecution. There's a probability or a possibility of persecution. Right. There's no direct evidence of his connection to any specific act of persecution. What I'm suggesting, Your Honor, is that, again, in order to just raise the inference, which is all that is required at this threshold determination, you know, for the government to satisfy its initial burden, does the evidence suggest that an act of persecution may have occurred? And when you couple his evidence, the testimony suggesting that he, I'm sorry, admitting that he turned people over to the S2 and that they might have been harmed, the background evidence is what really provides the sort of leap to the act of persecution because, again, it's very clear that the Treasury police and the S2 unit in particular were notorious human rights violators. Sure. I mean, there's no question about that. But the oddity of this case is you're only – it's purely speculative on what happened. And I understand, Your Honor, but, again, It's a lot different from the interpreter being in the room and watching. Absolutely. And, again, all that does, Your Honor, is illustrate the difficult line drawing issues that are presented by these cases. But I would also suggest, Your Honor, that the Court's recent decision in Young, the en banc decision in Young, and I apologize for not 2018-ing that before the argument. They were aware of it, though. I understand, Your Honor. And I appreciate that. The point there, not unlike this case, is that when the government has its initial burden to satisfy the court and the agency that a mandatory bar to relief may apply, it may be difficult to accept that, you know, the burden then becomes the alien's to prove that he is not so barred, that he, in this case, did not, in fact, participate in persecution. But that is precisely what Congress intended. And as the Court has said, even where the record may be in equipoise, where it's unclear whether there's actual evidence of an act of persecution on account of protected ground, Mr. Jandres does not satisfy his burden of overcoming the initial burden satisfied by the government that the bar does apply. And, again, that will be different than the other case, and it's much different than Miranda-Alvarado. But because the only issue here is whether the government presented enough evidence to satisfy that initial burden, even in the absence of a direct act of persecution, then Mr. Jandres has not done anything to satisfy his burden of demonstrating that he did not so act. What is the evidence as to the likelihood that people turned into this organization would be executed or tortured? Is it everybody turned in? Somebody turned in? A small number or a large number? What's the evidence? It's difficult to put a number or a percentage on that, Your Honor. I would say some. I believe some is a fair representation of what the background evidence in this particular record indicates, that, again, there's no question that the Treasury Police and the S2 were notorious human rights violators. Did it happen every time? I would suggest no. I don't think the record indicates that. Did it happen more often than not? Well, certainly, because that's enough to suggest that all the commentators and the evidence in the record reveal the sort of atrocities that were committed during this period in El Salvador's history. When you say some, and then you said more likely than not, does the evidence support more likely than not that people who were picked up by this organization, they were more likely than not tortured, or were they held for any other reason? I'd like to answer your question, Your Honor. My time has expired, but I'd like to continue. I should backtrack, Your Honor. I should not have said more often than not. Certainly there were times when people, suspected guerrillas, were arrested, detained, and turned over to the S2 for other reasons. But the general consensus was that they were targeted because they were determined, or at least suspected to be, part of the opposition rebel group. Whether they were then ultimately tortured, subjected to execution, or some other form of persecution is unclear. And again, it would be on a case-by-case basis that we would determine whether a particular suspect was subjected to that type of harm. But again, here, Your Honor, there may not be, and in fact there is not any direct evidence of a specific act of persecution about anyone or a set of guerrillas. The reason I ask,  on both sides. If a soldier turns in the captors, brings them back to headquarters, there's a reasonable possibility that they're going to be executed for being on the wrong side. And that's on both sides of that war at the moment. I don't think either side's more of a human rights violator than the other. But soldiers do capture people. And they either can let them go, shoot them on the spot, or take them back to wherever they're collecting these people. Would a soldier, under those circumstances, be a persecutor? Possibly, Your Honor. And again, the ultimate question there would be, does that soldier's particular conduct contribute to the persecution in some way? Is it more than just a tangential, does it have more than just a tangential connection? Well, I suppose it does, if the soldier brings them back to the place where he's executed. Absolutely, Your Honor. But if we don't know the soldiers execute, or the captive is executed, and we don't know what happens to him, it's a whole different case. I mean, that's why it makes it tough. Because then it gets close to mere membership. Absolutely. And that's why this case is difficult. And I take, I understand the distinction you're drawing between prima facie and evidence, but still it makes it a difficult case. It certainly does, Your Honor. But that is the pivotal question. And again, I don't mean to preview the next case, but we will have a much difficult... Can't wait for it. I know, I can't wait, Your Honor. So excited. But I... The problem with it is, if you bring them back, and the soldier's not going to know that the person was executed or not, they say, thanks a lot, and go back to the field. Now, if that's enough for prima facie, then maybe, it may well be. There's no way the soldier's going to be able to disprove, carry any burden of showing that the person who turned in was not executed. Well, I'm... I'm not sure that's entirely true, Your Honor. He may not be able to prove whether or not a specific person was or was not persecuted. But, again, this is all about who carries the burden. And if the government has satisfied its initial burden of indicating, I'm sorry, proving again that the evidence indicates that the persecutor bar may apply, there's no requirement of some conclusive evidence in that sense. It only has to raise the inference. And in that case, Your Honor, it would be incumbent upon the alien to come forth with some objective evidence disproving his assistance. How do you do that? Well... The problem is that then the analysis conflates on itself, and the inference made by the prima facie case becomes conclusive proof. You can't prove... The source says, I don't know what happened to them. The government can't prove any persecution occurred. How do you disprove it? Well, Your Honor, it might be possible to actually make that sort of determination or sort of showing if, for instance, Mr. Jandres had testified credibly. If he were found credible across the board and the court... I'm sorry, the agency first, and the court could believe his testimony that he didn't know exactly what happened, he had no knowledge whatsoever of the types of atrocities that were being committed. He might also testify he never captured anybody... Exactly. ...and turned them over. Exactly. I mean, soldiers do all sorts of things, and so mere membership is not enough. He might have been there peeling potatoes, doing kitchen police, you know, doing other things that soldiers do that don't actually involve capturing people in the field. Judge Kaczynski, you have that exactly right, and that's the point, because the agency took great pains here to point out that mere membership is not enough. No, I understand. And it's not requiring that Mr. Jandres or merely because Mr. Jandres was a member of the Treasury Police that he was, in fact, a persecutor for that reason alone. There is at least some evidence indicating that his conduct went beyond mere membership and, again, that the ultimate acts of oppression amounted to persecution on account of protected ground, and that's enough. Again, the very narrow question of whether the government satisfied its initial burden here is satisfied by the evidence that I can understand, Judge Thomas, is not necessarily the most convincing, but it's enough to satisfy the burden. And, again, Young is instructive on this point. The mere fact of a connection was enough. Thank you, Your Honor. Thank you. You have three minutes for rebuttal. Thank you, Your Honors. I'd like to reiterate the fact that what Counselor Hitch has brought up is that the evidence here is very speculative as to whether my client, when he turned over, suspected members of the guerrilla... But he says all of that is wave because you only raised the question of what the government made its prime facial showing. Is he right about that? But I'm saying... Is he right about that? No. I believe that the evidence that the government has shown is insufficient because it doesn't meet the standards set forth in Miranda-Alvarado. You have to have a continuum... In addition to what? To raise the inference. To raise the inference. You have to have a combination of factors. You know, personal involvement. How long was this person doing this? Was he present during the interrogation? No, that's in the second step of the inquiry. Well, you have to have more, I believe. To raise the inference. And why isn't showing membership in the group and the fact that he did turn people over, why isn't that enough? Well, because it doesn't require... There's no personal involvement in persecution. There's no direct evidence that he persecuted somebody on a protected ground. There's actually no evidence of that. The government doesn't have to prove persecution. It merely has to raise an inference and then it's up to your client to disprove persecution. That's the way the statute works. But basically the statute doesn't say that. The statute says ordered, assisted, or incited, or otherwise assisted in persecution. The regulation under 1240.8 talks about evidence that may indicate persecution. That seems to be very tentative and speculative. What evidence may raise the inference that there has been persecution? Miranda Alvarado says that there's got to be a continuum of conduct particularized to find out what, in fact, this person did. I mean, we don't have that evidence. It's speculation. And it's basically speculation and guilt by association. That's what it is. Well, what do you do with the BIA's affirmance of the adverse credibility finding? I believe that their decision was incomplete. I don't believe that they followed the standard in Miranda Alvarado. They didn't follow the standard in AA. Well, your client's testimony was unpersuasive because he lacked credibility. Well, yes, he lacked credibility. But I believe that there was inconsistencies because the judge didn't really identify other factors that were going on in the courtroom like his tone, his demeanor, which would have clearly indicated that this man was confused. He was trying to recollect facts that occurred like over 15, 20 years ago and wasn't completely articulate. He was low-level education, you know, things of that nature. I think the judge should have made a more particularized finding of credibility and discussed those issues, but she didn't do that. And, again, she found no direct evidence of persecution but yet said that he may have been a persecutor. And I don't think that the Congress intended to invoke the persecutor bar on the basis of speculation. Okay, thank you. Thank you. Thank you. Okay, Mr. Sawyer, we'll stand for a minute.
judges: Kozinski, Reinhardt, Thomas